IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 10, 2015

## LAQUINT DECO HOLDER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2011-C-2094      Cheryl Blackburn, Judge**

_____

**No. M2015-00107-CCA-R3-PC – Filed September 28, 2015**

_____

The Petitioner, Laquint Deco Holder, pleaded guilty to sale of less than .5 grams of cocaine in a drug-free zone, and the trial court entered the agreed sentence of six years to be served at 100%. The Petitioner filed a petition for post-conviction relief, alleging that he had received the ineffective assistance of counsel and that his guilty plea was unknowingly and involuntarily entered. After a hearing, the trial court dismissed the petition. On appeal, the Petitioner maintains that his counsel was ineffective and that his guilty plea was not knowingly and voluntarily entered. After review, we conclude that the post-conviction court did not err when it dismissed the Petitioner's petition for post-conviction relief. We therefore affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J. delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J. and ROBERT L. HOLLOWAY, JR., J. joined.

Ryan C. Caldwell, Nashville, Tennessee, for the appellant, Laquint Deco Holder.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Senior Counsel; Glenn R. Funk, District Attorney General; and Jeff Burks, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**
**A. Facts and Procedural History**

This case arises from the Petitioner's indictment in two different cases. In the first case, 2011-C-2094, the grand jury indicted the Defendant for the sale of more than .5 grams of cocaine in a drug-free zone, a Class B felony, and felony simple possession of cocaine, a Class E felony. In the second case, 2011-D-2938, the grand jury indicted the

Petitioner for possession of .5 grams or more cocaine with the intent to sell in a drug-free zone, a Class B felony.

At the guilty plea submission hearing, the trial court considered the fact that the Petitioner had been indicted in two separate cases. It further noted that, if the Petitioner was convicted of the Class B felony charge of possession of .5 grams or more of cocaine, he would face a sentence of twelve to twenty years because he was a Range II offender. The trial court informed the Petitioner that he was pleading to the lesser-included offense of the sale of less than .5 grams of cocaine in a drug free zone, a Class C felony, with an applicable sentencing range of six to ten years. The trial court informed the Petitioner that, because the offense occurred in a drug-free zone, the sentence must be served at 100%. The trial court stated that, according to the agreement, the other two charges against the Petitioner would be dismissed. The State informed the trial court that the Petitioner had been arrested the day before the hearing on new charges and that this plea agreement did not encompass those charges. The State also confirmed with the trial court that the Petitioner would not be able to petition for a suspended sentence.

The trial court reviewed the Petitioner's rights with him, inquired about his educational background, which the Petitioner said was eleventh grade. The Petitioner then confirmed that he was pleased with his attorney's ("Counsel") representation of him. The trial court ensured that Counsel was of the opinion that the Petitioner understood what he was doing by entering a guilty plea. Counsel said that she and the Petitioner had discussed the plea offers by the State and their respective ramifications "many, many, many times." The trial court noted that this was not the first time that the case had gotten to this point, noting that the Petitioner had almost pleaded guilty on several previous occasions, changing his mind before he entered his plea. The State then provided the following set of facts as a basis for entry of the Petitioner's guilty plea:

> Your Honor, in 2011-C-2094, *State vs. Laquinta* [sic] *D. Holder,* the State's proof would be that on 6-21-11 officers with the East Precinct CSU purchased, using an informant, less than half a gram of cocaine from [the Petitioner] at a location near [ ]Shelby Avenue. The buy was made, there was a buy-bust situation. The [Petitioner] was found to be in possession of the buy money immediately after the undercover buy. He had a very small amount [of cocaine] in his lap that fell to the ground when he was arrested. That's why Count 2 was simple possession. That's why he was charged with that. The incident occurred within a thousand feet of the Martha O'Bryan Day Care Center, and that would be the State's proof on that case.
>
> I think it's worth noting that the other case that's being dismissed is a class B over half a gram, and it would be in a school zone. It's in a

2

school, not day care zone.  That's a class A. [sic] We're dismissing that on his plea to this.  He has two prior felonies that make him a Range 2.  We've agreed to forego prosecution of the failure to appear.  He failed to appear in this court December 7, 2012 . . . .

The Petitioner acknowledged that he agreed with the facts presented by the State.  The trial court accepted the Petitioner's guilty plea.

The Petitioner then filed a *pro se* petition for post-conviction relief.  In it, he contended that he had received the ineffective assistance of counsel and that his guilty plea was not knowingly and voluntarily entered.  The post-conviction court appointed the Petitioner counsel, who filed an amended petition.  The amended petition alleged that the Petitioner's counsel at his guilty plea was ineffective because the State had previously offered him ten years, to be served at thirty-five percent, which would have required him to serve less time that a six year sentence, to be served at 100%.  He asserted that he did not understand the ramifications of the plea agreement, which stipulated that he would not have the opportunity to make parole or file for a suspended sentence.  The petition further averred that the Petitioner's guilty plea was not knowingly and voluntarily entered because he had only an eighth grade education level and did not understand that a ten year sentence at thirty-five percent carried less prison time than a six year sentence at 100%.

The post-conviction court held a hearing on the petition during which the parties presented the following evidence:

The Petitioner testified that he "[s]omewhat" had the opportunity to discuss his case with Counsel before he entered his plea.  He said that he was confused at the time because there was "a lot going on."  The Petitioner recalled that the State had offered him a community corrections sentence of ten years, but he was unsure of the applicable percentage of service of that sentence.  He said that the State rescinded that offer after the Petitioner was subsequently charged with another drug-related crime.

The Petitioner claimed that Counsel should have intervened in the State's rescinding of that offer because his brother "took the charge" for the drug-related crime that caused the State to rescind the offer.  The Petitioner testified that he had only achieved the eighth grade in school.  The Petitioner said that, while he could read and write, he did not understand the guilty plea that he had signed.  The Petitioner said that he thought that he could get two for one jail credit for his sentence.  He calculated that it would be the same as serving three years.  The Petitioner said that he did not discuss this with Counsel.  The Petitioner said he understood that he would be unable to petition for a suspended sentence but maintained that his decision was based upon his mistaken belief

that he would receive his "two for ones."  He said that, had he understood his sentence, he would not have pleaded guilty.

During cross-examination, the Petitioner agreed that his case was pending for a significant period of time and that he had a lot of court appearances.  His case was set for trial a number of times.  Further, there were several other pending cases against him in the same court.  He had been arrested for some of those charges while he was released on bond for another charge.  The Petitioner agreed that the parties negotiated the plea offer extensively.  The Petitioner expressed his belief that he could "beat the charge" if he went to trial, saying "That charge ain't nothing."  The Petitioner agreed that, in accordance with the plea agreement, the State dismissed a charge against him that also involved drugs in a school zone.

The Petitioner agreed that, on the day he entered his plea, there was much discussion about the fact that he had been offered his choice of an eight-year sentence at thirty-five percent or a six-year sentence at one hundred percent.  He maintained that he thought that "he still got [his] two for ones."

The Petitioner agreed that he knew on the day he entered his plea that he could reject the State's offer.  He said he did not feel that was in his best interest because "[he] had more cases, which [he] ended up getting dismissed and everything."  When asked if he made his decision on what he felt was in his best interest at the time, the Petitioner responded "One hundred percent."  The Petitioner said that, after he entered his plea, he felt "railroaded" and like his sentence was not a "good deal."

He agreed that there was nothing interfering with his ability to understand his plea, other than his being nervous.  He recalled the trial court informing him that the sentence was going to be six years, to be served at 100%.  He agreed that the trial court discussed with him the cases against him that were to be dismissed pursuant to his plea.  The Petitioner testified that he incorrectly informed the trial court that he had an eleventh grade education when he had, in fact, only completed the eighth grade.  The Petitioner said he did not want to plead guilty but felt he had no choice.

Upon questioning by the trial court, the Petitioner agreed that he had come to court "a few times" to enter a guilty plea before the guilty plea submission hearing.  He said that the trial judge discussed with him each time that his sentence would be served at 100%, day for day.  The trial court then asked him to explain why he then thought that he would get two for one service of his sentence.  The Petitioner said he thought that 100% only meant that he would not get parole.  The trial court reminded him that the two discussed this on several occasions and that the Petitioner would consistently say that he could not serve six years at 100%.  The Petitioner agreed that he never asked the trial

4

court about "two for one days." The trial court stated "We talked about day for day, one hundred percent, six years because of the . . . drug[-]free zone. It was a day care zone. Your other case was a school zone. What that means is your punishment goes up a class. That's why that one was a B felony."

Counsel testified that she was appointed to represent the Petitioner. Counsel recalled that the Petitioner was originally charged with possession with the intent to sell or deliver half a gram or more of cocaine in a drug free zone, a Class B felony. The Petitioner had previously been convicted of attempted first degree murder, along with other convictions, so he was a Range II offender with a sentencing range of twelve to twenty years. Additionally, he had been charged with simple possession, a Class E felony with an applicable sentencing range of two to four years. The State offered to allow the Petitioner to plead guilty to a C felony as a Range II offender with a sentencing range of six to ten years. There was, Counsel said, never an offer involving probation or community corrections. She said that she unsuccessfully attempted to negotiate for probation or community corrections. While the Petitioner was released on bond, he was again arrested, violating his parole and his bond related to another felony charge of possession with the intent to sell or deliver in a school zone. Counsel noted that, because the Petitioner was released on bond at the time of the new arrest, if he lost the two cases at trial the sentences would run consecutively, both to be served at 100%.

Counsel said she discussed these facts with the Petitioner "extensively." She said she discussed with him that the sentencing law was mandatory, that he did not have much of a defense, and that he was looking at a lengthy potential sentence. Counsel said that the Petitioner and his girlfriend, who had eleven children, six of whom the Petitioner fathered, felt it was important for him to be incarcerated in Nashville. The only way to do that was to receive a sentence of six years or less. The State initially did not offer a sentence of less than six years, however, in part because the Petitioner was on bond when he committed more offenses. The Petitioner then, while still on bond, committed a third offense, aggravated assault, a Class C felony. Counsel said that there were at least ten court appearances related to the Petitioner's various charges. The Petitioner had several offers during the course of her representation. The final two offers were eight years at thirty-five percent or six years at 100%. The Petitioner chose the six years at 100% because it meant that he could serve his sentence in Nashville. The Petitioner got a second and third opinion from other attorneys before making his decision. Counsel said that the Petitioner did not like any of his options.

Counsel testified that the Petitioner "[a]bsolutely" understood that he had the ability to reject all the offers and take his case to trial. She said she was present when he pleaded guilty and she did not think that he was intoxicated or sleepy. In fact, she had gone to the jail and met with the Petitioner earlier that day to discuss the plea.

5

During cross-examination, Counsel testified that if the Petitioner had accepted the eight years at thirty-five percent he would have served 2.8 years before he was parole eligible. She said that she discussed with the Petitioner that he would have to serve his sentence day for day. Counsel said that, while the Petitioner would serve less time under the other offer, she understood why he chose the State's offer of a six-year sentence. She said that the Petitioner had been unable to successfully complete parole for his attempted murder conviction. She said that, while he would be eligible for parole in 2.8 years that did not mean that he would be granted parole. In fact, she opined that, given his record, he would likely not receive parole. Further, the Petitioner did not want to be in the Tennessee Department of Correction. He wanted to be close to his family in Nashville. She recalled that many of his children were "very young."

Based upon this evidence the post-conviction court dismissed the Petitioner's petition. It found that the Petitioner had not established either of his claims by clear and convincing evidence. It stated:

> The Plea Petition signed by Petitioner (Ex. 2) explicitly states that the 6-year sentence is "to serve at 100%." Petitioner stated during the plea hearing that he is able to read that he read the petition. . . . Additionally, during the plea colloquy the trial court explicitly discussed with the Petitioner that the sentence involved serving 6 years at 100%. . . . As reflected by the transcript, although Petitioner posed questions along with [sic] way of the hearing, he affirmed he understood his plea entailed a sentence of 6 years to serve at 100%.

> Further, as summarized in Part III of this Order, [ ] Counsel testified that she discussed at length with Petitioner his cases and limited choices in light of the number of charges he acquired while on bond and the drug free zone laws. The Court finds [ ] Counsel's testimony to be credible.

> The Court itself recalls having multiple conversations . . . with Petitioner in open court throughout the pendency of his case, where the Court explained to Petitioner the ramifications of a school zone drug charge and the 100% sentencing requirement.

It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that his guilty plea was not knowingly and voluntarily entered because he thought that he was going to get two for one jail credit, meaning he was only going to serve thirty percent of his sentence. He asserts Counsel failed to inform him that, even though he was pleading to a 100% sentence, he would not be getting two for one credit. The Petitioner points out that he rejected an eight-year sentence, at thirty-five percent, that would have actually been less time and argues that this bolsters his contention that he thought that he would receive two for one credit for his six-year sentence. He asserts Counsel failed to inform him and that he had a minimal understanding of the law, making his guilty plea not knowingly and voluntarily entered.

The State counters that the Petitioner has not proven his contention that his guilty plea was unknowing and involuntary. It asserts that the post-conviction court credited Counsel's testimony that she advised him of the full consequences of his guilty plea. Further, the State avers, the Petitioner has not prove that his guilty plea was not knowingly and voluntarily entered.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2014). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2014). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997)). A post-conviction court's factual findings are subject to a *de novo* review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely *de novo* review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth

7

Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland,* 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad,* 938 S.W.2d at 369).

8

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994). In the context of a guilty plea, as in this case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of *Strickland*, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (footnote omitted); *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

In the case under submission, we conclude that the post-conviction court did not err when it denied the Petitioner post-conviction relief. The Petitioner did not prove that Counsel's representation of him was deficient. Counsel represented the Petitioner over the course of a long period of time, and she discussed with him on multiple occasions the consequences of his pleading guilty. She informed him that, because he had been arrested twice more while on bond, his choices were limited. She presented the State's two offers to the Petitioner and discussed with him the consequences of his choosing each offer. She recalled that the Petitioner did not like either scenario but that he understood the ramifications of each offer. Counsel negotiated a sentence of six years to encompass multiple felony drug charges for which the Petitioner was facing mandatory consecutive sentencing. We conclude that Counsel's performance was not deficient.

We further conclude that the Petitioner has not proven that his guilty plea was not knowingly and voluntarily entered. The transcript from the hearing shows that the trial court repeatedly informed the Petitioner that he would be serving his sentence day for day at 100%. The Petitioner is familiar with the criminal justice system. He had previously been incarcerated, and he acknowledged his understanding. His goal was to receive a sentence of six years or less so that he could be incarcerated in Nashville near his eleven children. Counsel credibly testified that he rejected the other offer, that would make him parole eligible at 2.8 years, based on his desire to be in Nashville and because he had reoffended while on parole previously. Counsel advised him that just because he was parole eligible did not mean he would receive parole. The transcript reveals that the trial court questioned the Petitioner about his understanding of the plea agreement and that the Petitioner understood his sentence and the ramifications of pleading guilty. The Petitioner is not entitled to relief on this issue.

9

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the post-conviction court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE